***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Gillen and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has *Page 2 
jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated.
3. The date of the accident was 17 January 2005.
4. An employment relationship existed at the time of the accident.
5. Jorge Rendon-Pineda sustained an injury by accident arising out of the course and scope of his employment with defendant-employer on 17 January 2005.
6. Defendants agree to be responsible for payment of any medical expenses for treatment received by Jorge Rendon-Pineda arising out of the incident.
7. Defendant-employer was subject to the Act on the date of the injury in question.
8. The injury was by accident arising out of the employment.
 ***********
The following was received into evidence:
 EXHIBITS
1. The Pretrial Agreement, marked as stipulated exhibit 1.
2. A photocopy of an All American Roofing business card produced by Jorge Rendon-Pineda at the hearing before the deputy commissioner, marked as defendants' exhibit 2.
 ***********
The following were received into evidence during the deposition of Patrick Clifford as:
 EXHIBITS
1. A two-page printout from the North Carolina Employment Security Commission, marked as plaintiff's exhibit A.
2. An eight-page document from the United States Department of Labor's Bureau of Labor Statistics, marked as plaintiff's exhibit B. *Page 3 
 *********** ISSUE PRESENTED
What was plaintiff's average weekly wage on 17 January 2005?
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff began working as a roofer for defendant-employer in January 2001 in Charlotte, North Carolina. At thAt time he was on a team and received his wages from an individual who ran the team.
2. By 2003 plaintiff was a team leader for defendant-employer. In this capacity plaintiff was paid cash by an agent of defendant-employer and distributed appropriate pay to those working under him on his team.
3. In January 2004 plaintiff moved to the Charleston, South Carolina area to do roofing work as a team leader for defendant-employer.
4. On 17 January 2005 plaintiff suffered a compensable head injury while working for defendant-employer when he fell from a ladder while installing a skylight. Following the accident plaintiff was in a coma for several weeks. Once out of the coma, it was determined that plaintiff had suffered permanent brain damage. Plaintiff currently resides in a group home for brain-injured patients.
5. Defendants filed a Form 60 dated 15 March 2005 admitting the compensability of plaintiff's head injury. Defendant-employer is no longer in business and did not provide employee payment records. Plaintiff's coworkers were not located to testify regarding plaintiff's *Page 4 
average weekly wage at the time of the compensable accident.
6. In the year preceding the 17 January 2005 accident, plaintiff oversaw two teams of workers for defendant-employer. After paying insurance of $2.00 per installed square, defendant-employer paid plaintiff $21.00 in cash for every roofing square installed by his teams. A square is equal to roughly 100 square feet of shingles. Defendant-employer's wage payment arrangement was such that on Fridays an agent of defendant-employer delivered to team leaders an envelope of cash. As team leader, plaintiff, in turn, paid wages to himself and to the workers on his team from this cash. He paid the workers on his teams $20.00 per square that they installed. In addition to keeping the money for the squares he installed, plaintiff kept $1.00 per square for himself to cover his teams' expenses such as gas, insurance, and equipment upkeep.
7. Defendant-employer also paid plaintiff for the installation of roof accessories such as skylights and chimney caps and for filling in chimneys. Plaintiff did most of this work by himself, but did pay workers if they helped him complete these tasks.
8. Plaintiff kept detailed notebooks regarding the work done by him and his teams. These books were lost while plaintiff was in a coma. Plaintiff subsequently attempted to locate these books but was unable to do so.
9. Vocational rehabilitation and evaluation expert Patrick Clifford testified by deposition subsequent to the hearing before the deputy commissioner on the subject of the average weekly wages that would have been earned by a roofer such as plaintiff during 2005. In preparation for his testimony, Mr. Clifford reviewed the transcript of the hearing in this matter before the deputy commissioner and researched historical wage data compiled by the North Carolina Employment Security Commission and the United States Department of Labor.
10. Mr. Clifford testified that the North Carolina Employment Security Commission *Page 5 
(NCESC) reported that an experienced roofer such as plaintiff similarly situated in Mecklenburg County in 2005 would have earned $610.40 per week. This data relied upon by Mr. Clifford reported by the NCSEC was based upon the 2003 Occupation Employment Statistics combined wage file. Mr. Clifford also opined based upon data from May 2006 from the United States Department of Labor (USDOL) that an experienced roofer such as plaintiff working in Mecklenburg County would have earned an average of $620.00 per week during 2005. However, the data reported by the USDOL does not take into account geographic location, only the level of experience.
11. According to plaintiff, he earned between $400.00 and $700.00 per week, but that he usually earned $650.00 per week. His weekly earnings varied depending upon the weather and time of the year. During the year preceding his injury, plaintiff only had one month, in January, in which his work was irregular. During weeks in which work was irregular plaintiff earned approximately $400.00 per week.
12. The Full Commission gives greater weight to the testimony of plaintiff regarding the determination of his average weekly wage than that of Mr. Clifford. Based upon the greater weight of the evidence the Full Commission finds that plaintiff earned $650.00 per week for 48 weeks and $400.00 per week for four weeks during the 52-week period of time prior to plaintiff's compensable injury.
13. From his weekly amount he paid for expenses incurred as team leader. Plaintiff maintained three vehicles for the purpose of operating his roofing endeavors, a 1998 truck, 1985 truck, and one Astro van. While the trucks were regularly used for plaintiff's business purposes, the van was an emergency vehicle and was used for personal use. There is insufficient evidence *Page 6 
that the van was used for business purposes or that there were any business expenses related to the van during the year preceding plaintiff's injury.
14. From the money plaintiff was paid every week he had to pay for the gas, maintenance, and insurance for the two trucks. Plaintiff spent approximately $350.00 a month on gas for the large truck and approximately $200.00 a month on gas for the small truck. Plaintiff spent $25.00 a week on gas for the compressors that powered the nail guns and other tools used in roofing. Therefore, plaintiff incurred approximately $160.00 in weekly gas expenses.
15. Plaintiff also paid insurance on his trucks used in his roofing operation. Plaintiff incurred $35.00 monthly in insurance payments on his trucks. In addition, plaintiff paid $150.00 per truck at the beginning of each insurance contract. These expenses approximate to $15.00 a week to insure his work trucks.
16. During the year preceding his injury, plaintiff had to buy the hoses and compressors used to power the nail guns used in his roofing operation, for which there is no evidence as to the cost to plaintiff. Plaintiff also had to purchase four protective harnesses for his crew at a cost of $360.00. The expenses for the harnesses cost plaintiff approximately $7.00 a week.
17. Based upon the greater weight of the evidence, plaintiff incurred approximately $182.00 in weekly business expenses. There is insufficient evidence regarding plaintiff's vehicles and equipment used in his business during the 52-week period preceding his injury in order to determine the amount if any of depreciation. Therefore, a further deduction for depreciation would not be fair and just to plaintiff. *Page 7 
18. The Full Commission has considered the methods for calculating average weekly wages set forth in N.C. Gen. Stat. § 97-2(5) and finds the fifth method to be applicable in this case given the evidence available. The first method is impractical because there is insufficient data available showing plaintiff's income during the 52 weeks immediately preceding the date of injury. The second method is inappropriate as it applies to an employee who has worked 52 weeks but missed more than seven consecutive days during that period. The third method is inappropriate because it applies to employees who worked less than 52 weeks by calculating their average weekly wage by dividing the actual earnings by the number of weeks worked. The fourth is not appropriate as plaintiff's employment was neither casual nor short in duration. Therefore, the fifth method is the most fair and just method to determine plaintiff's average weekly wage, given the evidence available.
19. Under the fifth method, plaintiff earned $650.00 per week for 48 weeks and $400.00 per week for four weeks during the 52 week period prior to his injury totaling $32,800.00. $32,800.00 divided by 52 weeks equals $630.77 per week. After deducting plaintiff's weekly expenses of $182.00, plaintiff average weekly wage is $448.77 yielding a compensation rate of $299.19. The Full Commission finds this amount to be fair and just to all parties.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. On 17 January 2005 plaintiff suffered a compensable head injury while working for defendant-employer when he fell from a ladder while installing a skylight, during the course and scope of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The Full Commission has considered the methods for calculating average weekly wages set forth in N.C. Gen. Stat. § 97-2(5) and finds the fifth method to be applicable in this case given the evidence available. The first method is impractical because there is insufficient data available showing plaintiff's income during the 52 weeks immediately preceding the date of injury. The second method is inappropriate as it applies to an employee who has worked 52 weeks but missed more than seven consecutive days during that period. The third method is inappropriate because it applies to employees who worked less than 52 weeks by calculating their average weekly wage by dividing the actual earnings by the number of weeks worked. The fourth is not appropriate as plaintiff's employment was neither casual nor short in duration. Therefore, the fifth method is the most fair and just method to determine plaintiff's average weekly wage, given the evidence available. N.C. Gen. Stat. § 97-2(5).
3. Under the fifth method of determining an employee's average weekly wage, plaintiff earned $650.00 per week for 48 weeks and $400.00 per week for four weeks for the 52-week period prior to his injury totaling $32,800.00. $32,800.00 divided by 52 weeks equals $630.77 per week. After deducting plaintiff's weekly expenses of $182.00, plaintiff's average weekly wage is $448.77 yielding a compensation rate of $299.19. Id.; Craft v. Bill ClarkConstruction Co.,123 N.C. App. 777, 474 S.E. 2d 808 (1996); Baldwin v. PiedmontWoodyards, Inc., 58 N.C. App. 602, 293 S.E.2d 814 (1982).
 *********** *Page 9 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's average weekly wage is $448.77, yielding a weekly workers' compensation rate of $299.19. Defendants shall pay plaintiff weekly compensation benefits in the amount of $299.19.
2. A reasonable attorney fee of twenty-five percent of the accrued and future compensation due plaintiff in this case is approved for plaintiff's counsel to be paid as follows: Twenty-five percent of any lump sums due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
3. Defendants shall pay the costs.
This the 5th day of August 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1